ATTORNEYS FOR APPELLANT
Jamie Andree
Indiana Legal Services
Bloomington, Indiana

Katherine Rybak
Indiana Legal Services, Inc.
Evansville, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Stephanie Rothenberg
Deputy Attorney General
Indianapolis, Indiana

Heather D. Cummings
Review Board of the Indiana
Department of Workforce Development
Indianapolis, Indiana

*In the*

## Indiana Supreme Court

FILED

Dec 29 2011, 3:13 pm

CLERK
of the supreme court,
court of appeals and
tax court

No. 93S02-1105-EX-285

DIANE RECKER,                                                    *Appellant (Claimant below),*

*v.*

REVIEW BD. OF THE IND. DEP'T OF WORKFORCE DEVELOPMENT, *Statutory Appellee,*[1]
                                     *and*
FEDEX TRADE NETWORKS,[2]                     *Appellee (Employer below).*

Appeal from the Review Bd. of the Ind. Dep't of Workforce Development, No. 10-R-1235

On Petition for Transfer from the Indiana Court of Appeals, No. 93A02-1005-EX-522

**December 29, 2011**

**Dickson, Justice**.

This is an appeal from the denial of unemployment insurance benefits to a claimant after her de-

---

[1] In every appeal from a decision of the Review Board of the Indiana Department of Workforce Development, the Board "shall be made a party appellee."  Ind. Code § 22-4-17-12(b).

[2] The appellee-employer is identified as FedEx Trade Networks in the caption of the decision of the Review Board, but is also variously identified throughout the record as Federal Express Corporation, Tr. at 2 and E-2, and FedEx Express, Tr. at E-8, E-4.  No appearance was filed by any attorney for this party on appeal.

parture from employment because she was unable to perform skills required for her employment. We affirm the denial of her claim.

The relevant facts as found by the Department of Workforce Development ("Department")[3] are not in dispute. Summarized briefly, the claimant-employee, Diane Recker, accepted an offer of employment from a parcel courier company, FedEx Trade Networks ("FedEx").[4] The offer expressly informed her that she would be subject to termination if she did not successfully complete all necessary training. Recker was repeatedly unable to pass a portion of the training program's driving test that required her to back up a truck on a serpentine course and into a parking space. She was required to fly to Tulsa, Oklahoma, to receive the training and take the driving test. During the flight from Indiana to Oklahoma, Recker's ears became "clogged," and she believed that this affected her ability to satisfactorily

---

[3] Under Indiana's statutory unemployment insurance scheme, claims for benefits are initially determined by the Department of Workforce Development. Ind. Code § 22-4-17-2(a). The Department administers "unemployment insurance," Ind. Code § 22-4-18-4, and provides support to the Indiana Unemployment Insurance Board, which "is responsible for the oversight of the unemployment insurance program." Ind. Code § 22-4-18-2(a). Initial claim decisions may be challenged by seeking a hearing before an administrative law judge employed by the Department. Ind. Code § 22-4-17-4(a). An appeal from an administrative law judge decision is taken to a review board appointed by the Governor. Ind. Code §§ 22-4-17-3(b), -5.

[4] We acknowledge that the identities of the claimant and employing unit are generally subject to the confidentiality requirements prescribed in Indiana Code Section 22-4-19-6(b). Excluding exceptions not relevant to the present case, the statute provides: "information obtained or obtained from any person in the administration of this article and the records of the department relating to the unemployment tax or the payment of benefits is confidential and may not be published or be open to public inspection in any manner revealing the individual's or the employing unit's identity, except in obedience to an order of a court or as provided in this section." Ind. Code § 22-4-19-6(b). This confidentiality requirement is expressly implemented as to judicial proceedings by Indiana Administrative Rule 9(G)(1)(b)(xviii). The rule further provides, however, that when information excluded from public access is presented in court proceedings open to the public, "the information shall remain excluded from public access *only* if a party or a person affected by the release of the information, prior to or contemporaneously with its introduction into evidence, affirmatively requests that the information remain excluded from public access." Adm. R. 9(G)(1.2) (emphasis added).

The decisions of the ALJ and the Review Board in this case were each expressly labeled as a "Confidential Record" pursuant to Indiana Code Section 22-4-19-6. Appellant's App'x at 2, 5. In the course of this appeal, the Appellee's Appendix filed by the employer was identified as "Confidential," but the Appellant's Appendix filed by the employee was not so labeled, and it disclosed her full name. Both the claimant-appellant and the Board-appellee used only initials to identify the claimant in their briefs, but the briefs of both revealed the identity of the employer. Neither the claimant, the employer, nor the Review Board, made any affirmative request pursuant to Administrative Rule 9(G)(1.2) to continue the exclusion from public access the identities and information confidential under the statute and rule. Pursuant to Administrative Rule 9(G)(1.2), in light of the absence of an affirmative request for continued confidentiality of the identities of the employee and the employing entity, we fully identify the parties. As to the facts of the case that derive from the records of the Department and are discussed in this opinion, we deem such information to be public as essential to the resolution of the litigation and appropriate to further the establishment of precedent and the development of the law. Adm. R. 9(G)(3) and 9(G)(4)(d).

2

complete the test. FedEx allowed Recker to take the driving test two times while in Oklahoma, although it generally only allows an employee to attempt the test once. Again, after Recker returned to Indiana, FedEx allowed her to take the test a third time, but she was still unable to pass. After the third failed attempt, FedEx gave Recker the option to resign immediately or to be placed on a thirty-day unpaid leave of absence, during which time she could apply for other positions within FedEx, after which time FedEx would consider her to have resigned voluntarily. Recker opted to resign immediately and thereafter sought unemployment insurance benefits. A claims deputy for the Department denied Recker's application for benefits on grounds that Recker (a) voluntarily left employment and (b) did so without good cause. Recker appealed the deputy's decision to the Department, and an Administrative Law Judge ("ALJ") concluded that Recker did not voluntarily quit her position but was constructively discharged. The ALJ determined, however, that Recker was disqualified from receiving unemployment insurance benefits because she had breached a duty reasonably owed to her employer, which breach constituted just cause for her termination.

Among its conclusions of law, the ALJ found that "the employer discharged the claimant for failing to pass the mandatory defensive training test," that "[t]he claimant should have known that there was a duty to maintain training levels in order to remain employed," that "[b]y failing to meet the training levels, the claimant no longer had the proper qualifications to meet the job requirements," and thus "that the claimant breached a duty reasonably owed to the employer and that the claimant was discharged for just cause as defined by Ind. Code § 22-4-15-1."[5] Appellant's Supp. App'x at 43. The findings of fact, conclusions of law, and decision of the ALJ were subsequently expressly adopted and approved by the Unemployment Insurance Review Board ("Board"). *Id.* at 45. Recker thereafter initiated this appeal. The Court of Appeals affirmed the Board's denial of benefits. D.R. v. Review Bd. of Ind. Dep't of Workforce Dev., 942 N.E.2d 820 (Ind. Ct. App. 2010). We granted transfer.

On appeal, Recker challenges "the Review Board's conclusion of ultimate fact—that she breached a duty reasonably owed to her employer and was discharged for just cause—[as] unreasonable and, thus, erroneous, in light of its findings of basic fact." Appellant's Br. at 6–7. She argues that (a)

---

[5] Subsequent to oral argument, on November 29, 2011, Recker filed a Notice of Additional Authority pursuant to Indiana Appellate Rule 48 directing our attention to 646 Indiana Administrative Code 5-8-4(c) (2011) (see http://www.in.gov/legislative/iac/), which addresses certain employee resignations. This is not relevant to any issue raised by Recker in this appeal and thus requires no discussion.

because her inability to perform a required task was not willful or intentional, she did not breach a duty owed to her employer, and (b) because the Indiana Unemployment Compensation Act was passed for the purpose of providing benefits to persons unemployed through no fault of their own she was not ineligible for benefits. *Id.* at 7–12.

The standard of review on appeal of a decision of the Board is threefold: (1) findings of basic fact are reviewed for substantial evidence; (2) findings of mixed questions of law and fact—ultimate facts—are reviewed for reasonableness; and (3) legal propositions are reviewed for correctness. McClain v. Review Bd. of Ind. Dep't of Workforce Dev., 693 N.E.2d 1314, 1318 (Ind. 1998). Ultimate facts are facts that "involve an inference or deduction based on the findings of basic fact." *Id.* at 1317. Where such facts are within the "special competence of the Board," the Court will give greater deference to the Board's conclusions, broadening the scope of what can be considered reasonable. *See id.* at 1318. The claimant does not dispute the Board's findings of basic fact but rather only the reasonableness of its conclusion of ultimate fact. Appellant's Br. at 6.

### 1. Breach of Duty and Inability to Perform

With respect to Recker's first contention, that she did not breach a duty owed to her employer because her inability to perform a required task was not willful or intentional, she asserts that the duty owed her employer was merely "to perform to the best of her abilities." Appellant's Br. at 5. Conceding that "[i]t is true that [she] knew she would be discharged if she were unable to complete the test," Recker asserts "[t]here is, however, a fundamental difference between knowingly violating a duty owed to an employer and simply being unable to perform despite all good faith efforts to the contrary." *Id.* at 9. This argument, however, conflates the question of whether Recker breached a duty to her employer with the *separate* question of whether she is at fault for the breach. Under Giovanoni v. Review Bd. of Ind. Dep't of Workforce Dev., breach and fault are separate inquiries.[6] *See* 927 N.E.2d 906, 908–12 (Ind.

---

[6] Recker points to several cases decided by the Court of Appeals that, in her opinion, hold that a breach of duty must be "willful." Appellant's Br. at 8–9 (citing McClain, 693 N.E.2d at 1318–20 (holding that an employee violated a reasonable and uniformly enforced rule of his employer when he allowed another employee to "clock out" his timecard); McHugh v. Review Bd. of Ind. Dep't of Workforce Dev., 842 N.E.2d 436, 442 (Ind. Ct. App. 2006) (holding that an employee breached a duty to her employer when she told her employer she was taking time off work to attend to personal matters but attended a sporting event instead), *trans. not sought*; Doughty v. Review Bd. of Dep't of Workforce Dev., 784 N.E.2d 524, 527 (Ind. Ct. App. 2003) (holding that an employee know-

2010).

Under the Unemployment Compensation System established by the General Assembly, an individual is disqualified from receiving benefits if discharged for just cause by the most recent employer. Ind. Code § 22-4-15-1(a). The statute delineates nine non-exclusive scenarios that can amount to "discharge for just cause." Ind. Code § 22-4-15-1(d). Many, but not all, of these include an express or implied requirement for the employee's conduct to have been willful (e.g., "falsification of an employment application to obtain employment through subterfuge," "knowing violation" of certain employer rules, "damaging the employer's property through willful negligence," and "refusing to obey instructions"). *Id.* In the present case, Recker was denied benefits because she was discharged for just cause for a "breach of duty in connection with work which is reasonably owed an employer by an employee." Ind. Code § 22-4-15-1(d)(9). This basis for a just cause discharge does not explicitly condition a claimant's ineligibility on a requirement that the breach of duty must have been knowing, willful, or intentional. Thus, deferring for a moment any application of the "at fault" factor under Giovanoni, we first determine whether the Board's conclusion of ultimate fact—that Recker "breached a duty reasonably owed to [FedEx]"—was reasonable.

As the principal source for understanding the "breach of duty" ground for just cause discharge, the parties point to Hehr v. Review Bd. of Ind. Emp't Sec. Div., 534 N.E.2d 1122 (Ind. Ct. App. 1989), *trans. not sought*. There the court cautions that "the 'breach of duty' ground for just [cause] discharge is an amorphous one, without clearly ascertainable limits or definition, and with few rules governing its utilization." *Id.* at 1126. The court in Hehr explained:

> In considering whether an employer may utilize this provision as a basis for justifying its action, the Board should consider whether the conduct which is said to have been a breach of a duty reasonably owed to the employer is of such a nature that a reasonable employee of the employer would understand that the conduct in question was a violation of a duty owed the employer and

ingly violated a reasonable and uniformly enforced rule of his employer against fighting with or assaulting another employee when he aided in the assault of another employee), *trans. not sought*; Hehr v. Review Bd. of Ind. Emp't Sec. Div., 534 N.E.2d 1122, 1126 (Ind. Ct. App. 1989) (holding that an employee breached a duty to his employer when he damaged or attempted to damage property on the employer's premises), *trans. not sought*. However, we note that all of these cases were decided before Giovanoni, which clarified that fault is a distinct inquiry. *See* 927 N.E.2d at 908–12. We note also that the McClain and Doughty cases rest on Indiana Code Section 22-4-15-1(d)(3), which defines "discharge for just cause" as the "*knowing* violation of [an employer rule]" (emphasis added), thus, explicitly requiring an inquiry into whether the employee's conduct was intentional or willful.

5

that he would be subject to discharge for engaging in the activity or behavior. *Id.* We agree .

We note, as a preliminary matter, that this is not a case that requires us to articulate the outer limits of the breach of duty ground for just cause discharge. Recker commenced her employment with FedEx fully informed that she would be subject to discharge if she did not successfully complete the mandatory training program. The offer letter expressly stated that the offer of employment was "contingent upon successful completion of . . . all necessary training." Appellee's Supp. App'x at 42. These facts demonstrate that Recker had notice that failure to pass the driving test would be a violation of a duty owed to FedEx and would subject her to discharge. In addition, the ability to back up a truck is an intrinsic part of the work responsibilities of a courier for a parcel delivery company such as FedEx. Indeed, Recker acknowledges as much in her petition to transfer. Appellant's Trans. Br. at 4 ("[Recker] does not dispute that it was reasonable for [FedEx] to expect her to pass their driving test or that [FedEx] had a right to fire her for failing to do so."). As the Court of Appeals has observed, a claimant should reasonably expect a duty fundamental to the claimant's job. Byrd v. Review Bd. of Ind. Emp't Sec. Div., 469 N.E.2d 463, 465 (Ind. Ct. App. 1984), *trans. not sought*. Actual driving competence, not just mere good faith, was an integral component of Recker's employment duties. The Board's finding that she breached a duty reasonably owed to the employer is reasonable.

## 2. Denial of Benefits and Absence of Fault

The employee also contends that her just cause discharge should not warrant a denial of her unemployment benefits because the purpose of the Indiana Unemployment Compensation Act is to provide benefits to persons unemployed through no fault of their own. Appellant's Br. at 11–12. She argues that "[t]he Review Board's decision to find her ineligible, even though passing the driving test was beyond her ability, stands in direct conflict" with this Court's recent opinion in Giovanoni. *Id.* at 12.

Giovanoni involved an appeal from a Review Board decision denying unemployment insurance benefits on grounds that the claimant-employee was discharged for just cause because of absences from work in violation of the employer's "no-fault" attendance rule. 927 N.E.2d at 908–09. There, the relevant statutory bases bearing on whether the discharge was for just cause were (a) an employee's "know-

6

ing violation of a reasonable and uniformly enforced rule of an employer," and (b) an employee's "unsatisfactory attendance, if the individual cannot show good cause for absences or tardiness[.]" *Id.* at 909 (citing Ind. Code § 22-4-15-1(d)(2)–(3)).  In <u>Giovanoni</u>, we held that a "'no-fault' attendance policy . . . may form an appropriate basis for discharge from employment" but that eligibility for unemployment benefits following such discharge must consider "whether, under the totality of circumstances, an employee's absenteeism is the result of circumstances beyond that employee's control."  927 N.E.2d at 912.  We concluded that disqualification from benefits is appropriate only if "[a]t a minimum, the claimant . . . performed some volitional act or . . . exercised some control over the circumstances resulting in the discharge from employment."  *Id*. at 910.

In contrast to the just cause bases for discharge in <u>Giovanoni</u>, both of which included express consideration of an employee's intent, Recker was discharged on grounds of breach of duty to her employer, which does not expressly require a finding of intent.  *Compare* Ind. Code § 22-4-15-1(d)(2) (requiring a "knowing" violation of an employer rule to constitute a "discharge for just cause"), *and* Ind. Code § 22-4-15-1(d)(3) (requiring that an employee show "good cause" to exclude absences or tardiness from constituting a "discharge for just cause") *with* Ind. Code § 22-4-15-1(d)(9) (defining "just cause" as "any breach of duty" without any corresponding reference to the employee's intent).  In <u>Giovanoni</u>, we held that "'just cause' determinations, as they pertain to an employee's discharge, must be consistent with the legislative purpose underlying the [Unemployment Compensation] Act—to provide financial assistance to an individual who . . . [is unemployed] through no fault of his or her own."  927 N.E.2d at 910.  We were concerned only with a discharge for the violation of an employer's attendance rule, *id.* at 909, not with a discharge based upon an employee's breach of duty.  Thus, we did not address whether the General Assembly intended to provide unemployment benefits to persons who *unintentionally* breach a duty to their employer.  Unlike the grounds for discharge in <u>Giovanoni</u>, there is no specified statutory intent for discharges for breach of duty.[7]

---

[7] Subsequent to our grant of transfer in this case, the Department published new regulations, apparently in response to both <u>Hehr</u> and <u>Giovanoni</u>, interpreting the terms "duty" and "breach of duty" as used in Indiana Code Section 22-4-15-1(d)(9). Ind. Reg. LSA Doc. No. 10-464 (May 25, 2011) (see http://www.in.gov/legislative/register/irtox.htm) (adding 646 Ind. Admin. Code 5-8-6 (2011) (see http://www.in.gov/legislative/iac/)).  The new regulation presents several non-exclusive examples of "breach of duty reasonably owed to an employer," among which are "damaged the employer's trust and confidence in the claimant's ability to effectively perform the job" and "willfully failed to meet the employer's reasonable expectation."  646 Ind. Admin. Code 5-8-6(b)(1), (2).  Neither party has sought retroactive application to this case of the Department's interpretation contained in the regulation.

As noted in <u>Giovanoni</u>, a claimant is not eligible for unemployment benefits when the individual has performed a "volitional act or . . . exercised some control over the circumstances" resulting in her discharge. *Id.* at 910. We find that Recker's unsuccessful attempts to properly back up a truck were matters over which Recker had "some control" under the <u>Giovononi</u> analysis. The ALJ's findings adopted by the Board acknowledge that Recker believed that her first two failures to pass the driving test in Oklahoma were the result of "clogged" ears, but the Board did not find this contention to be significant. Unlike the claimant in <u>Giovanoni</u>, who suffered from seizures and debilitating migraines, *id.* at 908, Recker makes no appellate claim that her inability to meet the job requirements was affected by a demonstrable impediment. It was reasonable for the Board to find that Recker was discharged for just cause and is therefore ineligible for benefits.

## Conclusion

For these reasons, we affirm the Review Board's determination that Recker was discharged for just cause and is therefore disqualified from receiving unemployment insurance benefits.

Shepard, C.J., and Sullivan, Rucker, and David, JJ., concur.