## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 09 2017, 8:25 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Troy D. Warner
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Andrea E. Rahman
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

J.B.,

*Appellant-Defendant,*

v.

Review Board of the Indiana Department of Workforce Development and Employer,

*Appellee-Plaintiff*

November 9, 2017

Court of Appeals Case No.
93A02-1611-EX-2666

Appeal from the Review Board of the Indiana Department of Workforce Development

Case No.
16-R-1458

**Barnes, Judge.**

# Case Summary

[1] J.B. appeals the denial of his request for unemployment benefits by the Review Board of the Department of Workforce Development ("Review Board"). We affirm.

# Issue

[2] J.B. raises several issues, which we consolidate and restate as whether the Review Board properly found that he was terminated for just cause.

# Facts

[3] J.B. was employed by Employer as a journeyman inside wireman from June 13, 2016, to July 14, 2016, when he was terminated from his position. J.B. applied for unemployment benefits, and a claims deputy denied the claim. J.B. then appealed the decision. An administrative law judge ("ALJ") held a hearing and found:

> The Claimant worked for the Employer from June 13, 2016 until July 14, 2016. The Claimant worked as a journeyman inside wireman. The Employer discharged the Claimant for destruction of company property by writing on a tool box in sharpie.
>
> On July 13, 2016, the Claimant and other employees left the work site early for the day because of a lack of clean and cold water on hand. The Claimant was frustrated by the Employer's lack of effort in addressing the situation. As a result, the Claimant took a sharpie and wrote on the Employer's tool box the instructions for how to reach OSHA if an employee had an issue with getting water. [Mr. D.] learned of the situation and questioned the Claimant about it. The Claimant admitted to

writing it. The Claimant offered to clean the writing off of the tool box. The Employer decided to go ahead and terminate his employment. The tool box was not painted over or cleaned as of the date of the hearing.

Appellant's App. Vol. III p. 4. The ALJ concluded:

Claimant owed a duty to the Employer to not damage any company property. While the Claimant's behavior in writing on the tool box was not the best way to address workplace safety issues, it was also not intentional destruction of company property. It also could be said that the Claimant was being insubordinate with his conduct, but it appears that his insubordinate attitude was due to the provocation of the inaction on the part of the Employer to provide water for its employees. Therefore, the Claimant did not breach a duty that a reasonable person would realize that it would result in termination of employment. Employer discharged the Claimant without just cause.

*Id.* at 5.

[4] Employer appealed the ALJ's decision to the Review Board. The Review Board found:

The Claimant began working for the Employer on June 13, 2016 as a journeyman inside wireman until his last day of employment on July 14, 2016.

The Employer had a job installing wiring in a new building that was under construction. As the building was under construction, there was no air conditioning, and the working conditions were very warm. The Employer provided water jugs and bottled water for its workers, but there had been a shortage of water bottles

since the day before. While there was water in the water jugs, the water was not cooled, and the Claimant believed the water jugs were contaminated with bacteria.

Due to his frustration over the lack of water, the Claimant wrote on the side of the Employer's gang box/tool box in permanent marker, "IOSHA, need drinking water call 317-234-3946." The Claimant stated that he wrote it on the side of the gang box, because he thought all of the guys would see it there when they got in the gang box to get tools. Information for employees regarding how to contact OSHA and their rights as employees was available in the Employer's office. When asked by the Employer if he had written the message on the gang box, the Claimant admitted that he did. The Employer discharged the Claimant for defacing the Employer's property.

*Id.* at 6. The Review Board concluded:

[T]he Claimant wrote a message to fellow employees in permanent marker on the side of the Employer's gang box. A reasonable person would understand that marking on someone else's property in permanent marker without the owner's permission was an act of defacement. The Claimant's conduct deliberately marked the Employer's property. Even if the Employer takes measures to cover-up or remove the defacement, the Employer's property will still have been permanently altered by the Claimant's actions.

The Claimant's behavior both damaged the Employer's property through willful negligence - it was in fact a deliberate act - and breached a duty owed to his Employer by purposefully defacing the Employer's property. The Claimant owed the Employer a duty to treat the Employer's property with reasonable care to maintain the equipment in the manner in which he found it and to utilize the equipment so that it only gradually deteriorated

under the usual wear and tear that occurs during its normal use - not to make a message board out of the side of the Employer's tool box. A reasonable employee would expect to be discharged for the same or similar behavior. The Employer discharged the Claimant for just cause.

*Id.* at 7. Consequently, the Review Board reversed the decision of the ALJ and determined that J.B. was not entitled to unemployment benefits. J.B. now appeals.

# Analysis

J.B. argues that the Review Board erred when it found he was terminated for just cause and was ineligible to receive unemployment benefits. On appeal, we review the Review Board's (1) determinations of specific or basic underlying facts; (2) conclusions or inferences from those facts, or determinations of ultimate facts; and (3) conclusions of law. *McClain v. Review Bd. of Indiana Dep't of Workforce Dev.*, 693 N.E.2d 1314, 1317 (Ind. 1998). The Review Board's findings of basic fact are subject to a "substantial evidence" standard of review. *Id.* In this analysis, we neither reweigh the evidence nor assess the credibility of witnesses and consider only the evidence most favorable to the Review Board's findings. *Id.* Reversal is warranted only if there is no substantial evidence to support the Review Board's findings. *Id.* (citing *KBI, Inc. v. Review Bd. of Indiana Dep't of Workforce Dev.*, 656 N.E.2d 842, 846 (Ind. Ct. App. 1995)). Next, the Review Board's determinations of ultimate facts, which involve inferences or deductions based upon the findings of basic fact, are generally reviewed to ensure that the Review Board's inferences are reasonable. *Id.* at 1317-18.

Finally, we review conclusions of law to determine whether the Review Board correctly interpreted and applied the law. *McHugh v. Review Bd. of Indiana Dep't of Workforce Dev.*, 842 N.E.2d 436, 440 (Ind. Ct. App. 2006).

[6] In Indiana, an employee is ineligible for unemployment benefits if he or she is discharged for just cause. *Recker v. Review Bd. of Ind. Dep't of Workforce Dev.*, 958 N.E.2d 1136, 1140-41 (Ind. 2011); Ind. Code § 22-4-15-1. Indiana Code Section 22-4-15-1(d) delineates nine non-exclusive scenarios that can amount to "[d]ischarge for just cause," which includes "(4) damaging the employer's property through willful negligence" and "(9) any breach of duty in connection with work which is reasonably owed an employer by an employee." The Review Board found that J.B. was discharged for just cause under both subsection (4) and subsection (9).

[7] With respect to subsection (4), which concerns damaging the employer's property through willful negligence, J.B. argues that the Review Board did not make any findings of fact that he had damaged the Employer's property. According to J.B., the Review Board "assumed damage had occurred without any finding nor evidence of actual damage."[1] Appellant's Br. p. 11. In support of his argument, J.B. relies on *Hehr v. Review Bd. of Ind. Emp't. Sec. Div.*, 534

---

[1] In support of his argument, J.B. relies on evidence that was not presented to the ALJ or the Review Board. Because J.B. failed to present this evidence below, he cannot present it on appeal. *See Schaefer v. Kumar*, 804 N.E.2d 184, 187 (Ind. Ct. App. 2004) ("It is well settled that matters outside the record cannot be considered by this court on appeal."), *trans. denied*. Moreover, the evidence does not qualify for judicial notice under Indiana Evidence Rule 201.

N.E.2d 1122, 1127 (Ind. Ct. App. 1989), where a striking worker hit vehicles with his hand. We held in *Hehr* that there was no evidence or finding of actual damage, and we reversed. Here, however, the Review Board found that J.B. had written on the Employer's gang box with a permanent marker, and J.B. admitted doing so. J.B. claims that the writing could be easily removed, but the Review Board concluded, "Even if the Employer takes measures to cover up or remove the defacement, the Employer's property will still have been permanently altered by the Claimant's actions." Appellant's App. Vol II p. 7. Here, there was actual evidence of damage, regardless of whether it could have later been repaired. *Hehr* is distinguishable, and the Review Board's conclusion regarding subsection (4) is reasonable.

[8]     Next, J.B. argues that the Review Board erred by finding that he was discharged for just cause based on subsection (9) for "any breach of duty in connection with work which is reasonably owed an employer by an employee." I.C. § 22-4-15-1(d)(9). The breach of duty "ground for just [cause] discharge is an amorphous one, without clearly ascertainable limits or definition, and with few rules governing its utilization." *Recker*, 958 N.E.2d at 1140 (quoting *Hehr*, 534 N.E.2d at 1126).

> In considering whether an employer may utilize this provision as a basis for justifying its action, the Board should consider whether the conduct which is said to have been a breach of a duty reasonably owed to the employer is of such a nature that a reasonable employee of the employer would understand that the conduct in question was a violation of a duty owed the employer

and that he would be subject to discharge for engaging in the activity or behavior.

*Id.* at 1140-41 (quoting *Hehr*, 534 N.E.2d at 1126).

[9] J.B. argues that the Review Board used the wrong standard by using a "reasonable person" standard rather than a "reasonable employee" standard. Under *Recker*, the proper inquiry is whether a "*reasonable employee* of the employer would understand that the conduct in question was a violation of a duty owed the employer." *Id.* (emphasis added). In support of this argument, J.B. relies on the Review Board's statement that "A reasonable person would understand that marking on someone else's property in permanent marker without the owner's permission was an act of defacement." Appellant's App. Vol. II p. 7. However, in discussing J.B.'s behavior, the Review Board also stated, "A reasonable employee would expect to be discharged for the same or similar behavior." *Id.* Consequently, the Review Board used the correct standard, and J.B.'s argument fails.

[10] Finally, J.B. argues that his actions were protected by the National Labor Relations Act and the Indiana Occupational Health and Safety Law and that his termination was a pretext for his protected activity complaints about the lack of water on the job site. J.B. did not raise these arguments below, and he cannot raise them for the first time on appeal. *See Leonard v. State*, 80 N.E.3d 878, 884 n.4 (Ind. 2017) (waiving an argument that was raised for the first time on appeal).

# Conclusion

[11] The Review Board's findings and conclusions are not clearly erroneous, and the Review Board properly concluded that J.B. was not entitled to unemployment benefits. We affirm.

[12] Affirmed.

May, J., and Bradford, J., concur.