## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 10 2015, 9:49 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

John R. Maley
Barnes & Thornburg LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
REVIEW BOARD

Gregory F. Zoeller
Attorney General of Indiana

Aaron T. Craft
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Wernle Youth & Family Treatment Center, Inc., <br><br> *Appellant,* <br><br> v. <br><br> Review Board of the Indiana Department of Workforce Development and C.B., <br><br> *Appellees* | July 10, 2015 <br><br> Court of Appeals Case No. 93A02-1501-EX-19 <br><br> Appeal from the Review Board of the Department of Workforce Development <br><br> Case No. 73921 |

**Crone, Judge.**

# Case Summary[1]

Wernle Youth & Family Treatment Center, Inc., ("Wernle") appeals the decision of the Review Board of the Indiana Department of Workforce Development ("Review Board") affirming an administrative law judge's ("ALJ") determination that Wernle's discharge of employee C.B. was not for just cause. Concluding that there is substantial evidence to support the Board's decision and that the decision is not unreasonable, we affirm.

# Facts and Procedural History[2]

The evidence favorable to the findings of fact adopted by the Review Board indicates that in June of 2012, C.B. began working for Wernle as a therapeutic behavior specialist responsible for overseeing the care of children and adolescents with emotional, behavioral, and/or mental health issues at Wernle's residential treatment facility. C.B. worked full time and was paid $9.00 per hour.

---

[1] Pursuant to Indiana Administrative Rule 9, the names of parties to unemployment compensation proceedings are confidential. However, the party or person affected by the release of protected personal information may waive the right to exclude the court record from public access. Ind. Administrative Rule 9(G)(6). Here, Wernle used its own name in its appellate pleadings and did not file any of its briefs or appendix on green paper. Thus, Wernle has waived the right to have its name excluded from the court record. *See Advanced Corr. Healthcare, Inc. v. Review Bd. of Ind. Dep't of Workforce Dev.*, 27 N.E.3d 322, 324 n.1 (Ind. Ct. App. 2015). Although not individually taking part in this appeal, C.B. has demonstrated no intent to waive confidentially, and consequently we will refer to her by her initials.

[2] As noted by the Review Board, Wernle's statement of facts is not "in accordance with the standard of review appropriate to the judgment or order being appealed." Ind. Appellate Rule 46(A)(6)(b). Wernle also improperly refers to additional evidence that was submitted to the Review Board following the ALJ's decision even though that evidence was specifically not accepted or considered by the Review Board. *See* Appellant's App. at 5. Finally, Wernle inappropriately refers to C.B. by her full name despite the fact that C.B. has not waived her entitlement to confidentiality. *See Advanced Corr. Healthcare, Inc.*, 27 N.E.3d at 324 n.1.

[3] On September 3, 2014, C.B. was working at Wernle when she became aware that a fourteen-year-old male resident had stolen a breakfast bar. C.B. confronted the resident, and the resident became angry. The resident responded by getting close to C.B. and balling his fists. C.B. said to the resident, "You need to get the hell out of my boundaries." Appellant's App. at 28. A coworker of C.B.'s reported the incident, and Wernle investigated. As part of the investigation, coworker Brittney McGuire provided a written statement. In the statement, McGuire alleged that C.B. took off her jacket, threatened to fight the resident, and used profanity. McGuire's statement was not specific regarding what profanity C.B. allegedly used. Wernle discharged C.B. on September 5, 2014, for engaging in prohibited conduct in violation of company policy.

[4] A claims deputy with the Indiana Department of Workforce Development determined that Wernle discharged C.B. for just cause and consequently that C.B. was ineligible for unemployment benefits. C.B. appealed that determination. A telephonic hearing was subsequently held by an ALJ. Wernle's director of human resources, Gretchen Johnson, and Wernle's senior program manager, John Claiborne, testified on behalf of Wernle. C.B. testified on her own behalf.[3] During the hearing, C.B. denied threatening to fight the resident. C.B. claimed that she was attempting to redirect the angry teen and handle the situation pursuant to her training. C.B. also denied that her actions

[3] Neither Wernle nor C.B. was represented by counsel during the hearing.

were mentally abusive to the resident. Johnson testified that she reviewed surveillance video of the incident, which did not include audio. Johnson stated that her main concern was C.B.'s physical behavior toward the resident, rather than any statements that C.B. may have made. Johnson noted that the video showed that C.B. took off her jacket during the incident. Johnson felt this was a sign that C.B. wanted to fight the resident. Johnson also noted that C.B. made a motion with her shoulders that Johnson described as "she was like lunging towards" the resident. *Id.* at 18. Johnson testified that she considered this to be a threat to the resident. C.B. disagreed with Johnson's description and stated that although she "was fully in an assertive motion," she did not "physically lunge at him at all." *Id*. at 29. C.B. further explained that she used verbal and physical prompts to redirect the resident in accordance with her training.

[5] In support of Wernle's decision to discharge C.B., Johnson cited to Wernle's employee manual and certain relevant company policies. Under the heading "Prohibited Conduct" the manual provides:

> Certain conduct may result in immediate termination. The management at Wernle will investigate reports of prohibited conduct and will determine responses based upon the findings on a case-by-case basis. Some acts of prohibited conduct that may result in immediate termination include but are not limited to:
>
> - Deliberate acts that threaten the health, safety and well-being of residents, employees or guests of Wernle
>
> …
>
> - Acts of physical, emotional or mental abuse
>
> …

- Fighting, assaulting, threatening or intimidating residents, co-workers or guests

…

- Use of profanity or abusive language

*Id.* at 62-63. Johnson testified that although the incident on September 3, 2014, was sufficient by itself to warrant C.B.'s immediate discharge, Johnson did undertake a review of C.B.'s prior history of discipline before discharging her.

[6] At the conclusion of the hearing, the ALJ took the matter under advisement. Thereafter, the ALJ issued findings of fact and conclusions thereon reversing the deputy's determination and concluding that Wernle's discharge of C.B. was not for just cause and thus that C.B. was entitled to benefits. The ALJ concluded in relevant part as follows:

> [T]here is insufficient evidence in the record to demonstrate that [C.B.] violated the Employer's rule. The main concern the Employer had with the September 3, 2014 incident was [C.B.'s] actions, which the Employer felt were threatening or intimidating to the resident. [C.B.] denies that she was threatening to fight the resident. Ms. Johnson based her conclusion on the review of the video coverage. [C.B.'s] removal of her jacket during the altercation is not conclusive evidence of a threat to fight. The Employer also considered [C.B.'s] movement of her shoulders to be a lunge toward the resident. [C.B.] disagrees, testifying that she was attempting to redirect the resident and handle the situation pursuant to her training. Although [C.B.] acknowledges that she told the [resident] to "get the hell out of her boundaries," [C.B.] disputes the fact that she threatened to fight the resident or that her actions were mentally abusive. In this case the testimony conflicts between the parties as to the characterization of [C.B.'s] actions. The Administrative Law Judge concludes that testimony that [C.B.] made a shoulder movement indicative of a desire to fight and took off her jacket is not enough evidence to prove that [C.B.] was in violation of

the Employer's policies.  The record does not support a conclusion that [C.B.] knowingly violated a reasonable and uniformly enforced rule.  The employer discharged [C.B.], but not for just cause, as defined by Indiana Code Section 22-4-15-1(d).

*Id*. at 4.

[7] Wernle appealed the ALJ's decision to the Review Board.  On December 15, 2014, the Review Board affirmed the ALJ's decision and adopted and incorporated the ALJ's findings and conclusions.  Wernle now appeals to this Court.[4]

# Discussion and Decision

[8] The Indiana Unemployment Compensation Act provides that "[a]ny decision of the review board shall be conclusive and binding as to all questions of fact." Ind. Code § 22-4-17-12(a).  Our standard of review on appeal of the Review Board's decision is threefold: (1) findings of fact are reviewed for substantial evidence; (2) findings of mixed questions of law and fact—ultimate facts—are reviewed for reasonableness; and (3) legal propositions are reviewed for correctness.  *Recker v. Review Bd. of Ind. Dep't of Workforce Dev.*, 958 N.E.2d 1136, 1139 (Ind. 2011) (citing *McClain v. Review Bd. of Ind. Dep't of Workforce Dev.*, 693 N.E.2d 1314, 1318 (Ind. 1998)).

---

[4] We note that Wernle made a request for oral argument in the conclusion paragraph of its appellant's brief. The proper procedure for requesting oral argument is to file a motion with this Court pursuant to Indiana Appellate Rule 52.  In any event, oral argument is not warranted in this case, and we deny Wernle's request.

[9] We review the Review Board's findings of basic facts under a "substantial evidence" standard, and we neither reweigh the evidence nor assess its credibility. *Chrysler Group, LLC v. Review Bd. of Ind. Dep't of Workforce Dev.*, 960 N.E.2d 118, 122 (Ind. 2012). We consider only the evidence most favorable to the Review Board's findings and, absent limited exceptions, treat those findings as conclusive and binding. *Id.* "Such exceptions include if the evidence 'was devoid of probative value,' or 'was so proportionally meager as to lead to the conviction that the finding does not rest upon a rational basis,' or the result of the proceedings was unduly influenced, fraudulent, or arbitrary." *Id.* at 122 n.2 (quoting *McClain*, 693 N.E.2d at 1317 n.2).

[10] Ultimate facts are reviewed to ensure that the Review Board has drawn a reasonable inference in light of its findings on the basic, underlying facts. *Id.* We examine the logic of the inference drawn and impose any rules of law that may drive the result. *Id.* at 123. Finally, we are not bound by the Review Board's interpretation of the law and we determine de novo whether the Review Board correctly interpreted and applied the applicable law. *S.S. v. Review Bd. of Ind. Dep't of Workforce Dev.*, 941 N.E.2d 550, 554 (Ind. Ct. App. 2011).

[11] Pursuant to Indiana Code Section 22-4-15-1(a), an individual is disqualified from receiving unemployment benefits if he or she is discharged for just cause by the most recent employer. "Discharge for just cause" includes the "knowing violation of a reasonable and uniformly enforced rule of an employer…." Ind. Code § 22-4-15-1(d)(2). An applicant's entitlement to unemployment benefits is

determined based on the information that is available without regard to a burden of proof. Ind. Code § 22-4-1-2(c). "There is no presumption of entitlement or nonentitlement to benefits. There is no equitable or common law allowance for or denial of unemployment benefits." Ind. Code § 22-4-1-2(d).

[12] On appeal, Wernle contends that the Review Board's decision to allow C.B. unemployment benefits is unsupported by substantial evidence and unreasonable. We cannot agree. As clearly indicated by the ALJ, there was conflicting evidence regarding C.B.'s behavior and whether that behavior could be characterized as a deliberate act that threatened the well-being of the resident, an act of physical, emotional or mental abuse, or an act that was threatening or intimidating to the resident, in violation of Wernle's prohibited conduct policies. In finding that the record does not support a conclusion that C.B. knowingly violated a reasonable and uniformly enforced rule, the ALJ, and in turn, the Review Board, resolved the evidentiary conflict in favor of C.B. Contrary to Wernle's assertions, we cannot say that the evidence supporting the Board's finding was devoid of probative value or was so proportionally meager as to convince us that the finding does not rest upon a rational basis. *See Chrysler Group,* 960 N.E. 2d at 122 n.2. Indeed, consistent with our standard of review, we do not reweigh that evidence or reassess witness credibility. *Id.* The Review Board's conclusion that C.B. was not discharged for just cause was

based upon a reasonable inference in light of its findings on the basic, underlying facts.[5]

[13] In sum, there is substantial evidence in the record to support the basic finding that C.B. did not knowingly violate a reasonable and uniformly enforced rule. This supports the ultimate finding of fact and conclusion that C.B. was not discharged for just cause pursuant to Indiana Code Section 22-4-15-1(d). The decision of the Review Board is affirmed.

[14] Affirmed.

Brown, J., and Pyle, J., concur.

---

[5] Wernle also references C.B.'s undisputed use of profanity ("hell") and argues that "[t]his by itself, is sufficient for termination, particularly given her prior policy violations." Appellant's Br. at 11. However, whether Wernle could have discharged C.B. for using the word "hell" is irrelevant because Wernle admittedly did not discharge C.B. on those grounds. *See Voss v. Review Bd. of Emp't & Training Servs.*, 533 N.E.2d 1020, 1021 (Ind. Ct. App. 1989). ("Whether or not other grounds may have existed for [the claimant's] discharge is irrelevant because [the employer] did not exercise its discretion to discharge [the claimant] on those grounds and neither the Board nor this court can assume it would have done so."); *but see Alebro, LLC v. Review Bd. of Ind. Dep't of Workforce Dev.*, 968 N.E.2d 236, 240 (Ind. Ct. App. 2012) (slightly limiting breadth of *Voss* to avoid illogical or absurd results). Wernle concedes this point in its reply brief and states that "[a]lthough the termination was not based on the profanity itself, this undisputed hostility confirms [C.B.'s] other violations." Appellant's Reply Br. at 3. The Review Board clearly did not make the same inference from the evidence, and we disagree with Wernle's assertion that the inference the Board did make was unreasonable.